UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TAMARIN LINDENBERG, | : | |
| | : | |
| | : | Civil Action No. 14-833 (SRC) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| ARRAYIT CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion filed by Defendant Arrayit Corporation ("Arrayit Corporation") pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims asserted against it in the First Amended Complaint. Plaintiff, Tamarin Lindenberg ("Plaintiff" or "Lindenberg") has opposed the motion. Also before the Court is the motion to dismiss filed by Defendant/Third-Party Defendant John Howell ("Howell"), pursuant to Federal Rule of Civil Procedure 12(b)(2), on the grounds that this Court lacks in personam jurisdiction over him. Howell's motion has been opposed by Plaintiff and by Defendant/Third-Party Plaintiff Avant Diagnostics (formerly known as Arrayit Diagnostics). The Court has considered the papers filed by the parties. For the reasons that follow, Arrayit Corporation's motion to dismiss and Howell's motion to dismiss will both be granted.

1

I. **BACKGROUND**

This lawsuit arises out of the termination of Plaintiff's employment.

In February 2012, Plaintiff Lindenberg, then a resident of Tennessee, entered into a three-year employment agreement with Arrayit Diagnostics, a medical technology company incorporated in Nevada.[1] It currently maintains its principal place of business in Scottsdale, Arizona, although the motion papers indicate that it was previously headquartered in Oregon. At the time Plaintiff was hired, Defendant John Howell, served as the CEO of Arrayit Diagnostics. He is a resident of the State of Oregon and has been at all relevant times. Plaintiff alleges that Howell asked Plaintiff, a cancer survivor, to join Arrayit Diagnostics as an executive and consultant for the purpose of using her personal story to promote an early detection test for ovarian cancer, known as OvaDx, to investors. Lindenberg further alleges that, in connection with her employment, she moved to New Jersey at Howell's request and resided with her family in a house leased by Arrayit Diagnostics.

The First Amended Complaint avers that in May 2012, a decision was made by Howell, Lindenberg and others that a separate private company would be formed for the purpose of raising capital and commercializing the OvaDx test. This company would be known as Yarra. According to Plaintiff, it was agreed that Arrayit Diagnostics would transfer to Yarra its licensing rights to the OvaDx test in exchange for an ownership interest in Yarra. It was further agreed that Lindenberg would be Yarra's CEO but would also remain an employee of Arrayit Diagnostics until the transfer was finally executed. Plaintiff asserts that Howell met with her and

---

[1] The company's name was changed to Avant Diagnostics after Plaintiff was terminated. Because it operated under the name Arrayit Diagnostics at all times relevant to this suit, the corporate entity which entered into an employment contract with Plaintiff will be referred to as "Arrayit Diagnostics" in this Opinion.

2

other individuals in New Jersey to discuss the formation of Yarra and the transfer of OvaDx. Howell acknowledges that he traveled to New Jersey for a meeting in May 2012 but maintains that it pertained to the business of Arrayit Diagnostics. He further asserts that the location was chosen as mutually convenient for the participants, who were all out-of-state residents, and that his visit to New Jersey on that occasion lasted 48 hours.

A June 2012 agreement, signed by Howell for Arrayit Diagnostics and Lindenberg for Yarra, memorializes the plan to transfer OvaDx to Yarra. The plan did not, however, come to fruition. Lindenberg avers that in or around November 2012, she questioned Howell about a filing made by Arrayit Diagnostics with the Securities and Exchange Commission ("SEC") containing information she claims misrepresented the facts relating to the agreement between Arrayit Diagnostics and Yarra. Howell resigned from Arrayit Diagnostics in that same month. He was succeeded by Defendant Steven Scott. Lindenberg alleges that she again raised the issue of the allegedly false SEC filing in meetings held December 17 and 18, 2012. On December 19, 2012, Arrayit Diagnostics terminated Lindenberg's employment. In a January 8, 2013 letter signed by Scott on behalf of Arrayit Diagnostics, Lindenberg was informed that her termination was based on violations of the employment agreement, including her activity in connection with Yarra, citing the employment agreement's non-compete provision.

Lindenberg initiated this action in the Superior Court of New Jersey, Essex County, on or about October 1, 2013. She named various defendants, including movant Arrayit Corporation, which is identified as the corporate parent of Arrayit Diagnostics.[2] The action was removed to this Court by Defendant Arrayit Corporation on grounds of diversity jurisdiction pursuant to 28

---

[2] According to the First Amended Complaint, Arrayit Corporation owned 61% of Arrayit Diagnostics during the time of Plaintiff's employment.

U.S.C. § 1332(a).  The First Amended Complaint asserts the following state law claims against all Defendants: retaliatory termination in violation of the Conscientious Employee Protection Act ("CEPA"); breach of contract; breach of the implied covenant of good faith and fair dealing; economic duress; and intentional infliction of emotional distress.  It also asserts a claim against Arrayit Corporation for tortious interference with her employment agreement.

## II.   ARRAYIT CORPORATION'S MOTION TO DISMISS

Arrayit Corporation moves for dismissal of the entire First Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.)  Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  While the Court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

The Court will apply this standard as it analyzes, in turn, the six claims asserted against Arrayit Corporation.

### A.  CEPA Claim

CEPA, N.J.S.A. 34:19-1, et seq., prohibits employers from taking retaliatory actions against employees "who 'blow the whistle' on organizations engaged in illegal or harmful activity." Young v. Schering Corp., 141 N.J. 16, 23 (1995).  It provides a cause of action to an aggrieved employee or former employee against the employer. See N.J.S.A. 34:19-5. The statute defines an employee as "any individual who performs services for and under the control and direction of an employer for wages or other remuneration." N.J.S.A. 34:19-2b. An employer is also expressly defined by CEPA as "any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent . . . ." N.J.S.A. 34:19-2a.

Arrayit Corporation argues that Lindenberg cannot state a plausible CEPA against it for the simple reason that the First Amended Complaint does not, and cannot allege that Arrayit Corporation was Lindenberg's employer.  Arrayit Corporation is correct that the First Amended Complaint lacks factual allegations that plausibly support the label of employer, within the meaning of CEPA.  Lindenberg alleges that she was hired by Howell, then CEO of Arrayit Diagnostics.  It further alleges that pursuant to an agreement she entered into with Arrayit Diagnostics, Lindenberg served as a consultant for that company.  The First Amended Complaint does not allege any facts demonstrating that Lindenberg performed services for Arrayit Corporation, that Arrayit Corporation directed and controlled the performance of her duties as a consultant and/or executive or that Arrayit Corporation paid Lindenberg wages or other remuneration for her services.  Her allegation, in paragraph 8 of the First Amended Complaint,

that Arrayit Corporation was her employer, as defined by CEPA, is a purely conclusory recital of an essential element of a CEPA claim and thus insufficient to state a plausible a claim.  Iqbal, 556 U.S. at 678.  Moreover, while an individual or entity, though not strictly a plaintiff's employer, may be exposed to CEPA liability based on its involvement in the decision to subject the plaintiff to a retaliatory employment action, see Michel v. Mainland Regional Sch. Dist., 2009 WL 2391293, at *2 (D.N.J. July 30, 2009), Lindenberg's allegations that Arrayit Corporation caused Arrayit Diagnostics to terminate her employment are also conclusory.  The First Amended Complaint avers that Arrayit Corporation knew of Lindenberg's three-year employment contract with Arrayit Diagnostics, knew that she complained of the fraudulent SEC filing and "caused" Scott, by then the CEO of Arrayit Diagnostics, to terminate her on December 19, 2012.  It does not allege that Arrayit Corporation directed that this allegedly retaliatory action against Plaintiff be taken, nor does it otherwise elaborate on the facts supporting the conclusion that it caused Scott to terminate Lindenberg for "blowing the whistle" with regard to the SEC filing.

Plaintiff, in opposition to Arrayit Corporation's motion, argues that the claim against Arrayit Corporation should survive based on a veil piercing theory.  This attempt fails for two reasons.  Initially, the Court notes, this theory of liability is not pled in the First Amended Complaint, and a pleading may not be amended through briefing on dispositive motions. Federico v. Home Depot, 507 F.3d 188, 201–02 (3d Cir. 2007).  Second, while the First Amended Complaint alleges facts demonstrating that Arrayit Diagnostics was a subsidiary of Arrayit Corporation, it is a fundamental proposition of New Jersey corporate law that "a corporation is a separate entity from its shareholders."  State, Dep't of Envtl Protection v. Ventron Corp., 94 N.J. 473, 500 (1983).  According to this principle, shareholders are typically

6

shielded from the liabilities of the corporation, "even in the case of a parent corporation and its wholly-owned subsidiary. . . ." Id. To pierce this corporate veil, and pursue a shareholder or parent corporation, a plaintiff must demonstrate that the "subsidiary was 'a mere instrumentality of the parent corporation.'" Id. (quoting Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 34-35 (1950)). The New Jersey Supreme Court has described this standard as limited to extraordinary situations demonstrating abuse of the corporate form. It has held as follows:

> Application of this principle depends on a finding that the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent . . . Even in the presence of corporate dominance, liability generally is imposed only when the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.

Id. at 501 (citations omitted). The First Amended Complaint is devoid of actual allegations that Arrayit Diagnostics was used by Arrayit Corporation as an instrumentality for its own ends or in some other way completely dominated such that the two entities did not exist separately. The bald assertion that Arrayit Corporation used its subsidiary to gain control of the OvaDx test through fraudulent means does not suffice to state a plausible veil piercing theory of CEPA liability against Arrayit Corporation, such that the Court could consider, at least at the pleading stage, Arrayit Corporation to be the employer in substance if not in form.

Accordingly, Plaintiff's CEPA claim against Arrayit Corporation will be dismissed

### B. Contract Claims

A prima facie breach of contract claim requires a plaintiff to show, at a minimum, that a contract existed between the parties. Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 275 F. Supp. 2d 543, 566 (D.N.J.2003) (applying New Jersey law). Plaintiff's claim that Arrayit Corporation breached the three-year employment agreement fails to allege the essential

element that Arrayit Corporation was a party to the contract. Simply put, taking as true the First Amended Complaint's factual allegations, Plaintiff entered into an agreement with Arrayit Diagnostics, not Arrayit Corporation. The absence of an alleged contract with Arrayit Corporation defeats the breach of contract claim. It also defeats the claim for breach of the implied covenant of good faith and fair dealing, as "[o]ne cannot read additional terms into a non-existent contract." McQuitty v. Gen. Dynamics Corp., 204 N.J. Super. 514, 520-21 (App. Div. 1985). For these reasons, the Court will dismiss Plaintiff's claims against Arrayit Corporation for breach of contract and breach of the implied covenant of good faith and fair dealing.

### C. Economic Duress

New Jersey law recognizes the doctrine of economic duress as grounds for invalidating an otherwise enforceable contract. Cont'l Bank of Pa. v. Barclay Riding Academy, 93 N.J. 153, 175-76 (1983). It is not, however, recognized as an "affirmative tort action." Nat'l Amusements, Inc. v. N.J. Tpk. Auth., 261 N.J. Super. 468, 479 (Law Div. 1992), aff'd, 275 N.J. Super. 134 (App. Div. 1992.); see also Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc., 2011 WL 3022243, at *7 (D.N.J. July 22, 2011) (noting same and citing governing cases). Plaintiff, in her opposition to Arrayit Corporation's motion to dismiss, cites no New Jersey authority to the contrary. Accordingly, the economic duress claim will be dismissed.

### D. Intentional Infliction of Emotional Distress

A viable claim for intentional infliction of emotional distress requires a plaintiff to establish "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (1988). In her brief, Plaintiff argues that a plausible claim is stated based on Arrayit Corporation's allegedly unlawful

termination of Plaintiff despite knowing two things: (1) that she was a cancer survivor and would lose health insurance benefits upon termination and (2) that she had relocated with her children to New Jersey for her employment and would be forced to find a new home, as the lease was paid by her employer. This argument mischaracterizes the facts alleged in the First Amended Complaint. As the Opinion has discussed, the First Amended Complaint does not allege that Arrayit Corporation terminated her employment or breached an employment contract to which it was not a party. Moreover, Plaintiff has not alleged that Arrayit Corporation engaged in the kind of conduct targeted by this cause of action. To state an intentional infliction of emotional distress claim, Plaintiff would have to allege conduct by Arrayit Corporation that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Restatement (Second) of Torts, § 46, cmt. d (1965)). Therefore, Lindenberg's claim for intentional infliction of emotional distress will be dismissed.

### E. Tortious Interference

In the alternative to pleading for relief against Arrayit Corporation on a breach of contract theory, Plaintiff asserts a claim for tortious interference. This claim requires a plaintiff to allege, among other elements, that the defendant interfered with the plaintiff's reasonable expectation of economic advantage and, further, that the interference was done with "malice," meaning that "the harm was inflicted intentionally and without justification or excuse." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751 (1989). Plaintiff argues that she states a plausible claim because the First Amended Complaint alleges that Arrayit Corporation knew of her three-year employment contract with Arrayit Diagnostics and directed it to terminate Plaintiff's employment after she questioned the allegedly fraudulent SEC filing, thus interfering

9

with the economic gain Plaintiff expected to receive under her contract.  This alleged act of intentional and unjustifiable interference with Plaintiff's employment contract is, however, based on conclusions rather than factual allegations.  The claim will be dismissed pursuant to Rule 12(b)(6).

### III.     HOWELL'S MOTION TO DISMISS

Defendant Howell moves to dismiss pursuant to Rule 12(b)(2), arguing that he lacks sufficient contacts with New Jersey for this Court to have personal jurisdiction over him.  Upon the filing of a Rule 12(b)(2) challenge to a court's exercise of personal jurisdiction, the burden falls on the plaintiff to establish, by a preponderance of the evidence, that personal jurisdiction over a defendant exists.  D'Jamaoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009); Carteret Sav. Bank v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).

The concept of "personal jurisdiction," or "in personam jurisdiction," refers to a court's power over a particular defendant.  Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945). The Federal Rules of Civil Procedure provide that a district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under state law. Fed. R. Civ. P. 4(k)(1). A district court exercising diversity jurisdiction over a case must look to the forum state's long-arm statute in analyzing whether there is personal jurisdiction over a non-resident defendant.  Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir. 1993). New Jersey's long-arm statute permits the exercise of personal jurisdiction "to the fullest limits of due process."  IMO Indus., Inc. v. Kiekert AG, 155 F.2d 254, 259 (3d Cir. 1998). The Fourteenth Amendment's Due Process Clause requires that "individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 472 (1985). Consistent with the Due Process Clause, a court may assert personal jurisdiction so long as the defendant has "certain minimum contacts" with the forum, in this case New Jersey, such as not to "offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co., 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). There are "two types of personal jurisdiction which comport with these due process principles: general and specific jurisdiction." Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008).[3]

In this case, both Plaintiff Lindenberg and Third-Party Plaintiff Arrayit Diagnostics have argued in their opposition papers that this Court has specific jurisdiction over Howell. "Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (quoting Burger King Corp., 471 U.S. at 472).  They point to two instances in which Howell, a resident of Oregon, directed his activities to New Jersey: the leasing of a home in New Jersey by Arrayit Diagnostics, while Howell was CEO, for Lindenberg in connection with her employment and the all-day meeting in New Jersey in May 2012.  Neither of these, however, provides sufficient minimum contacts to satisfy due process.  Plaintiff's claims for relief arise out of the termination of her employment with Arrayit Diagnostics.  Though Lindenberg points to the fact that the termination letter was directed to New Jersey, that January 8, 2013 letter was signed by Defendant Scott as CEO of

---

[3] "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state." Kehm Oil Co., 537 F.3d at 300.  Lindenberg and Arrayit Diagnostics make clear in their opposition papers that they do not contend that this Court has general jurisdiction over Howell.  Thus, the Court will discuss only specific jurisdiction in its analysis.

Arrayit Diagnostics.  There is no indication that it was sent to Lindenberg's New Jersey address by Howell.  Indeed, Howell had resigned from Arrayit Diagnostics prior to Lindenberg's termination.  Nor is there any indication that this action relates to Howell's meeting with Lindenberg in New Jersey.  Even assuming that the meeting in fact involved discussions about the formation of Yarra, which Scott's January 8, 2013 letter cited as cause for Lindenberg's termination under the employment agreement, Howell's travel to New Jersey for a single business meeting occurring in the course of Plaintiff's employment with Arrayit Diagnostics is at most tangential to the breach of contract claim she asserts.  It does not meet the standard that Howell's contacts with New Jersey were "instrumental in either the formation or the breach" of the employment contract.  Control Screening LLC v. Tech. Application & Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012) (setting forth the showing that must be made in a contract case to establish sufficient minimum contacts with the forum in which personal jurisdiction is asserted).  The New Jersey meeting does not appear to relate to the CEPA whistleblower claim at all.

In short, Plaintiff and Third-Party Plaintiff have not demonstrated that Howell's contacts with this forum give rise or relate to Plaintiff's claimed injury of wrongful termination from Arrayit Diagnostics.  The Court finds that it has no in personam jurisdiction over Howell.  Accordingly, Howell's motion to dismiss will be granted.

### IV.   CONCLUSION

For the foregoing reasons, the Court will grant Arrayit Corporation's motion, dismissing all claims asserted against it in the First Amended Complaint.  Leave to amend will not be granted, as there is no indication that Plaintiff could assert additional factual allegations to cure the deficiencies discussed above.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d

Cir.2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile).  Amendment of the First Amended Complaint, should additional facts be available to Plaintiff, will require a motion for leave to amend in accordance with Federal Rule of Civil Procedure 15.

The Court will also grant Howell's motion to dismiss, for lack of personal jurisdiction.

An appropriate Order will be filed.


      s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  August 6, 2014